UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                      )
                                            )
    EVELYN L. COOK              )    Case No. 06-11627-SSM
                                            )    Chapter 7
           Debtor          )

**MEMORANDUM OPINION**

      Before the court is the motion of Gordon P. Peyton, chapter 7 trustee, for turnover of $3,670 in state and federal income tax refunds received by the debtor. A hearing was held on July 24, 2007, at which the debtor was present in person and represented herself. For the reasons stated, judgment will be entered in favor of the trustee for the estate's portion of the refunds together with pre-judgment and post-judgment interest.

<u>Background</u>

      Evelyn L. Cook ("the debtor"), filed a voluntary petition in this court on November 30, 2006, for adjustment of her debts under chapter 13 of the Bankruptcy Code. The following day, she filed, and the court granted, a motion to convert her case to chapter 7. Gordon P. Peyton was appointed as trustee and presided over the meeting of creditors that was held on December 28, 2006. On January 2, 2007, the trustee filed a report of no distribution stating that there were no assets to be administered for the benefit of creditors. On her schedules, the debtor had listed among her assets "possible tax refund" in the amount of "$4,000.00(?)". No portion of the tax refund was claimed exempt on Schedule C.

1

On February 13, 2007, the debtor received (by direct deposit into her checking account) a Virginia income tax refund in the amount of $962.00 and on February 16, 2007, a federal income tax refund in the amount of $2,708.00. She notified the trustee that she was receiving the refunds, and on February 13, 2007, the trustee withdrew the report of no distribution and requested the clerk to give creditors notice of the need to file proofs of claim. The debtor wrote the trustee a letter that same date explaining that the state tax refund was needed to pay overdue utility bills and a portion of the first month's rent for the apartment she was moving to because she could not afford the rent on the old apartment. The trustee replied that the refund belonged to the estate and that he had no choice but to require that it be turned over. The debtor—who in the interim had been granted a discharge on March 15, 2007—then filed a motion to dismiss her case. The motion to dismiss was denied on April 4, 2007. After the debtor did not comply with the trustee's renewed request that she turn over the refunds, the trustee filed the motion that is presently before the court.

The debtor, both in a written response to the motion and orally at the hearing, stated that the refunds had been spent to pay outstanding bills and basic living expenses and that she was without the financial means to pay the refunds to the trustee even in installments.[1]

---

[1] The debtor is employed as a secretary with a government agency. As most recently amended, her schedules of income and expenses reflect net monthly income of $4,147 and monthly expenses of $4,995, for a monthly shortfall of $847. The court denied the debtor's request for approval of two reaffirmation agreements—one for a computer, the other for an automobile— based on a finding that the debtor could not afford the payments.

<u>Discussion</u>

I.

The filing of a bankruptcy petition creates an estate for the payment of creditor claims. The property of this estate consists in the first instance of "all legal and equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1), Bankruptcy Code. This includes income tax refunds owed to the debtor for the taxable year, or portion of it, preceding the filing of the petition, even though the return is not filed, and the refund received, until after the date of the petition. *Kokoszka v. Belford*, 417 U.S. 642, 94 S. Ct. 2431, 41 L. Ed. 2d 374 (1974); *In re Sutphin*, 24 B.R. 149 (Bankr. E.D. Va. 1982); *In re Whitmer*, 228 B.R. 841 (Bankr. W.D. Va. 1998). When a bankruptcy petition is filed in the middle of a tax year, any income tax refund is property of the estate only to the extent it is attributable to prepetition earnings. *Sutphin*, 24 B.R. at 149. In the absence of evidence showing that the withholdings occurred or were concentrated only in certain months, the proper method of calculating the estate's share of the refund is by prorating on the basis of the number of calendar days before and after the petition. *Id.; Whitmer*, 228 B.R. at 844 n.5. Since the debtor's petition was filed on November 30, 2006—which was 333 days into the calendar year—the portion of the $3,670.00 refund that became property of the estate was 333/365ths of that amount, or $3,348.25.

The debtor is required to surrender all property of the estate to the trustee. § 521(a)(4), Bankruptcy Code. Additionally, the standard Order to Debtor entered at the outset of this case directed the debtor to "safely care for, protect and preserve all of your property" and to "make [it] available to the trustee, when requested to do so." Order to

3

Debtor (December 3, 2006), Doc. # 15.  The debtor does not dispute that she had a legal duty to turn over the estate's share of the refund but raises essentially two arguments in opposition to the trustee's motion.  The first is that the refunds have already been spent, and she simply does not have the financial ability to pay them over to the trustee.  The second is that no purpose would be served by turnover, since the tax refunds were used in large measure to pay the same claims that would be paid by the trustee.  The court will address these arguments in reverse order.

II.

The original schedules filed by the debtor list 15 unsecured claims totaling $144,669.54.[2]  The bank statement the debtor provided for the month in which she received the tax refunds does not reflect payments to any of the creditors that are listed on the schedule of unsecured creditors.  To be sure, certain of the payments—for example, to Verizon Wireless, Verizon Communications, Dominion Virginia Power, and Cox Communications—may well represent accounts on which the debtor had fallen behind shortly before or after the bankruptcy filing, but they are not listed on the schedule of unsecured creditors.  So far as the court can determine from reviewing the bank statement, the refunds were simply used to pay basic living expenses, including groceries, rent and car payments.  But even if the debtor had used <u>all</u> of the refund to pay certain creditors with allowed claims in this case, it by no means follows that the creditor body has not been damaged.  One of the major themes of bankruptcy administration is equality of distribution

---

[2] More than two-thirds of this amount consists of student loan debt.  The debtor has recently filed amended schedules that list one additional unsecured creditor, bringing the total to $159,919.54.

among similarly-situated creditors.  When a debtor uses money that belongs to the estate to pay certain creditors, but not others, the policy of equal distribution is violated.  In this case, the filed unsecured claims total $129,361.  None of the creditors filing those claims is shown by the bank statement as having been paid from the tax refunds.  Had the estate's portion of the tax refunds been paid over to the trustee, those creditors would have received at least some (although admittedly a very small) distribution.[3]  Because they have instead received nothing, they have been prejudiced.

### III.

There remains the issue of whether turnover can properly be ordered when the debtor no longer has the asset that is the subject of the motion.  There appears to be no dispute that the specific funds at issue have been spent and cannot literally be returned.  New funds, however, continue to be deposited into the account from direct deposits of the debtor's pay, and courts have long indulged the presumption that where funds belonging to another are commingled with a defendant's own funds, the defendant's funds are withdrawn first.  *In re U.S. Lan Systems Corp.,* 235 B.R. 847, 854 & n.11 (Bankr. E.D. Va. 1998).  Accordingly, courts apply what has been termed the "lowest intermediate balance" rule to determine that any money in the account equal to the lowest balance since the funds were commingled are equitably owned by the party with the superior right of ownership.  *Id.*  Determining the lowest intermediate balance in this case is complicated by the fact that the debtor maintained both a checking account and a savings account in the same institution and shifted funds back

---

[3] The trustee's statutory commission on an estate of $3,348 is $837.  This would leave $2,511 available for distribution, resulting in a dividend of approximately 1.9 cents on the dollar.

and forth between them—not for any nefarious purpose, but simply, it appears, to earn the most interest—with the result that any balance computation would have to consider both accounts. But in any event, since the bank statement provided by the debtor covers the period only through March 13, 2007, there is no ready means of determining how much presently remains identifiable as property of the estate, although it is certainly less than the amount sought by the trustee.[4]

The question, then, is whether turnover requires that the respondent still have possession of the property that the trustee is seeking. Courts have divided on this issue. Some have cited a pre-Code Supreme Court decision, *Maggio v. Zeitz*, 333 U.S. 56, 68 S. Ct. 401, 92 L. Ed. 476 (1948), for the proposition that "[t]he nature and derivation of the [turnover] remedy make clear that it is appropriate only when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof by the defendant *at the time of the proceeding*." *Id.* at 63-64, 68 S. Ct. at 405 (emphasis added); *see also Brown v. Pyatt (In re Pyatt)*, 486 F.3d 423 (8th Cir. 2007) (holding that debtor could not be required to turn over funds that were withdrawn from his checking account when prepetition checks were honored by his bank post-petition). Others have held that enactment of the Bankruptcy Code altered the pre-Code practice, such that "[p]resent possession is no longer a prerequisite [to turnover] liability," and that "liability may be predicated upon possession 'during the case,' not just at the time the [turnover] order is entered." *Boyer v. Davis (In re U.S.A. Diversified Prods., Inc.)*, 193 B.R. 868, 878 (Bankr. N.D. Ind. 1995).

---

[4] The lowest aggregate balance after the federal income tax refund was deposited through March 13, 2007, was $1,009.96.

The Fourth Circuit, confusingly enough, appears to have espoused both positions. In *Hager v. Gibson*, 109 F.3d 201 (4th Cir. 1997), the court considered an appeal of a $115,444.32 preference judgment against a co-owner of a corporation (named, ironically enough, Preference, Inc.). Prior to the filing of the bankruptcy petition, the co-owner had used $40,000 of the corporation's money to purchase a promissory note on which he was personally liable as guarantor. On appeal, the trustee conceded that preference was not the appropriate legal theory for recovery of the $40,000, but maintained that the judgment could be affirmed on alternate grounds, among them the turnover provisions of § 542(a) of the Bankruptcy Code. *Id.* at 203-05, 207-08. The court rejected the argument, explaining, "*Present possession*, either actual or constructive, of *the property or its identifiable proceeds*, by the person from whom its turnover is sought, is required for recovery under this section." *Id.* at 210 (emphasis added). The trustee had argued that the promissory note purchased with the $40,000 constituted "proceeds" of the cash, but the court did not agree, and, after rejecting an alternative argument based on a state law claim for breach of fiduciary duty, reversed the judgment with respect to the $40,000. *Id.* at 210-12.

In a subsequent opinion, however, the Fourth Circuit retreated from the position that "present possession" was a prerequisite for turnover. *In re Shearin*, 224 F.3d 353 (4th Cir. 2000). In *Shearin*, the trustee had brought a turnover action against the law firm in which the debtor was a partner to recover a year-end distribution of profits that the partnership had paid to the debtor after the filing of the bankruptcy petition. Among other defenses, the law firm asserted that it no longer had the profits at the time the adversary proceeding was

brought and could not be required to turn over what it no longer possessed. *Id.* at 355. The court rejected this position, stating,

> Section 542(a) provides a broader remedy than solely the turnover of property held at the time of an adversary proceeding, which could occur well after the filing of a bankruptcy petition. . . . We construe the language "during the case" to refer to the entire bankruptcy case, not just the adversary proceeding.

*Id.* at 356. The court accordingly held that the debtor's year-end profits, prorated to the date of the bankruptcy petition, "are subject to turnover," and that the law firm "having possessed such profits must 'account for' that property 'or the value of said property.' *Id.* The court, by a two to one majority, distinguished *Hager v. Gibson*—upon which the law firm partially relied—by stating that the defendant in *Hager* "did *not* have possession of the money at any time." *Id.* at 357 (emphasis in original).[5]

A sister bankruptcy court within this circuit, without citing either *Hager* or *Shearin*, has addressed a situation very similar to the present case. *In re Gentry*, 275 B.R. 747 (Bankr. W.D. Va. 2001). The debtor in that case failed to comply with an order to turn over a tax refund, and the trustee then brought a motion to have the debtor held in contempt. In response, the debtor contended that she should not be held in contempt because she had received and expended the tax refund on necessities for the support of her dependent and herself prior to the entry of the turnover order. *Id.* at 749 & n.4. Unlike the debtor in this case, however, the debtor in *Gentry* had not opposed the original motion for turnover. The court first held, citing *Boyer v. Davis*, that the debtor's expenditure of the tax refund prior to the entry of the turnover order did not defeat the trustee's right to recover the refunds, or an

---

[5] The dissenting opinion by Judge Wilkins read *Hager v. Conley* as clearly precluding a turnover judgment when the defendant no longer had the property. 224 F.3d at 358-59.

equivalent amount of cash, from the debtor. *Id.* at 750-51. The court then qualified this broad position by stating that if the debtor "does not possess either the property . . . *or [its] value* . . . at the time the turnover action is heard, then the debtor has a valid defense to the turnover action." *Id.* at 751 (emphasis added). This holding did not assist the debtor in *Gentry*, however, because the court held that the turnover order was *res judicata* on the debtor's ability to comply and could not be collaterally attacked in a contempt proceeding for failure to comply with the order unless the circumstances that made compliance factually impossible arose since entry of the turnover order. *Id*. at 752-53. Accordingly, the court adjudged the debtor in civil contempt until she purged herself by paying the trustee the amount of the refunds plus interest from the date of the turnover order and an amount representing the value of the trustee's time expended in pursuing the contempt proceeding. *Id* at 753.

Reconciling *Hager, Shearin,* and *Gentry* is not an easy task. The court is persuaded, however, that even though the debtor has spent the original cash that was property of the estate, she can be ordered to turn over "the value of the property, i.e., an equivalent amount of cash." *Gentry.* 375 B.R. at 751. If, however, the debtor shows that she "is not in possession of the property *or its value* at the time that the turnover action is heard, then entry of a turnover order is precluded," and the trustee instead "is more appropriately entitled to the recovery of a money judgment against the debtor for the value of the property of the estate." *Id.* In the present case, the court is satisfied that the debtor does not have sufficient funds in her possession to simply write the trustee a check for the $3,348.25 that the court has determined was property of the estate. The court is far from persuaded, however, that

9

Case 06-11627-SSM    Doc 76    Filed 07/31/07    Entered 07/31/07 16:23:37    Desc Main
                              Document      Page 10 of 12

the debtor will never be in a position to pay that amount. The court concludes, therefore, that the appropriate relief is a money judgment in favor of the trustee for the amount in question. The court will therefore enter judgment in favor of the trustee against the debtor in the amount of $3,348.25, together with prejudgment interest from February 16, 2007 (the date she received the second refund) and post-judgment interest, both at the federal judgment rate.

IV.

Two additional points are perhaps worth making. The first is that even if the trustee is unable to collect upon his judgment, he is not without a possible alternate remedy in the form of an action to revoke the debtor's discharge based on failure to comply with the order requiring her to safely care for and preserve her property. *Jordan v. Smith (In re Jordan)*, 356 B.R. 656 (E.D. Va. 2006) (holding that debtor's discharge was properly revoked for refusing to obey court order where, after receiving an order requiring her to safely care for, protect, and preserve all her property, she refinanced her home and spent the proceeds).[6] Because such an action is not before the court at this time, the court expresses no opinion as to its possible merit.

The second point is that the present controversy would probably never have arisen had the debtor been represented or advised by counsel. As part of his or her fresh start, an individual debtor is permitted to retain certain property that would otherwise be property of

---

[6] In theory, the trustee could also bring avoidance actions against the parties who received payment from the refunds. § 549, Bankruptcy Code (allowing trustee to avoid unauthorized post-petition transfers). In this case, however, the amounts received by any individual recipient are relatively small and would likely not justify the expense of litigation to recover them.

the bankruptcy estate.  § 522(b)(1), Bankruptcy Code.  In this case, the debtor, had she taken timely action, could likely have exempted the income tax refunds under the Virginia homestead exemption.  § 522(b)(2), Bankruptcy Code; Va. Code Ann. §§ 34-1 & 34-13 (allowing residents of Virginia to exempt up to $5,000 of real or personal property from claims of creditors).  In order to claim the homestead exemption, however, a debtor in bankruptcy is required to list the exempt property in an instrument called a homestead deed and record it—not later than 5 days after the meeting of creditors is held—in the clerk's office of the circuit court of the city or country where the real estate is located or, if personal property is claimed, where the debtor resides  Va. Code Ann. §§ 34-14 & 34-17.  The failure to timely record a homestead deed results in a loss of the exemption in bankruptcy.  *In re Watkins*, 267 B.R. 703, 707 (Bankr. E.D. Va. 2001).  This is an unfortunate result, and the court is not without sympathy for the position in which the debtor now finds herself.  Be that as it may, the court has no power to relieve a debtor from a duty to account to the trustee for property of the estate simply because the debtor was not represented by an attorney and was unaware of the procedure for claiming exemptions.

   A separate order will be entered granting judgment in favor of the trustee for the estate's portion of the tax refunds.

Date: _____           _____
                                      Stephen S. Mitchell
Alexandria, Virginia                  United States Bankruptcy Judge

Copies to:

Evelyn L. Cook
13068 Marcey Creek Road
Herndon, VA 20171
Debtor *pro se*

Gordon P. Peyton, Esquire
Redmon. Peyton & Braswell
510 King Street, Suite 301
Alexandria, VA 22314
Chapter 7 trustee